978 F.2d 1255
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Clyde MACK, Jr., Plaintiff-Appellant,
v.
AIKEN ELECTRICAL COOPERATIVE, INCORPORATED; Ray B. Gunter,
Defendants-Appellees.
 No. 92-1322.
 United States Court of Appeals,
Fourth Circuit.
 Argued: October 1, 1992
Decided: November 13, 1992
 
 Appeal from the United States District Court for the District of South Carolina, at Columbia. Dennis W. Shedd, District Judge. (CA-89-1982-3-19)
 ARGUED: James Lewis Mann Cromer, Cromer & Mabry, Columbia, South Carolina, for Appellant.
 Stephen Terry Savitz, Gignilliat, Savitz & Bettis, Columbia, South Carolina, for Appellees.
 ON BRIEF: Linda Pearce Edwards, Gignilliat, Savitz & Bettis, Columbia, South Carolina, for Appellees.
 D.S.C.
 Affirmed.
 Before POWELL, Associate Justice (Retired), United States Supreme Court, sitting by designation, and WIDENER and MURNAGHAN, Circuit Judges.
 PER CURIAM:
 
 OPINION
 
 1
 Clyde Mack, Jr., appeals from the district court's order granting summary judgment to Defendants on his complaint alleging that he was terminated because of his race in violation of Title VII, 42 U.S.C. § 2000e et seq. We review the district court's grant of summary judgment de novo, applying the same standard applied by the court below. See Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1127-28 (4th Cir. 1987). Finding no error, we affirm.
 
 
 2
 * Aiken Electrical Cooperative (the Co-op) is in the business of providing electrical service to a certain region of South Carolina. The Co-op provides one service: connecting electricity to a customer's power pole. Prior to having service connected by the Co-op, a customer must first hire an electrician to wire the power pole.
 
 
 3
 Clyde Mack, an African-American male, began employment with the Co-op in 1970 as a ground crewman. During his seventeen years of employment with the Co-op he received several promotions. Mack was terminated in May 1987 following an incident involving electrical work completed at the home of Gloria Muller.
 
 
 4
 On or about May 6, 1987, Gloria Muller visited the Co-op's office to complain about electrical work done at her home. Mrs. Muller told Jimmie Gill, the Co-op's cashier, that anyone who touched her trailer received an electrical shock. Mrs. Muller reported that she paid Clyde Mack $275 to "wire her meter pole," and that he had done the work improperly.
 
 
 5
 Ray Gunter, District Manager of the Co-op, investigated Mrs. Muller's complaint. The Co-op was concerned about Mrs. Muller's complaint regarding Mack because the Co-op's moonlighting policy forbids employees from performing electrical work other than Co-op work without approval from management. According to Gunter's affidavit, Muller told Gunter that Clyde Mack had wired her meter pole, and that she had paid him $275 to do the work. Gunter's investigation revealed that the power pole at Mrs. Muller's residence had been wired improperly. According to Gunter's affidavit, Co-op linemen are instructed not to make the Co-op's electrical connection unless the lineman's inspection reveals that the power pole has been wired properly. Mack denied that he wired Mrs. Muller's meter pole, but Mack admitted that he "temporarily" made the Co-op's electrical connection to the Muller residence. After his investigation, Gunter discharged Mack for moonlighting and unauthorized use of Co-op equipment in violation of Co-op policy.
 
 
 6
 Mack filed a charge of race discrimination with the South Carolina Human Affairs Commission. In his charge, Mack alleged that the Coop and Ray Gunter fired him because he is black. Before the Commission issued a determination, Mack requested a Notice of a Right to Sue. The Notice was issued by the Commission on April 12, 1989, and by the Equal Employment Opportunity Commission on May 19, 1989.
 
 
 7
 Mack filed suit in federal district court on August 8, 1989, alleging several causes of action under 42 U.S.C. § 2000 et seq. and 42 U.S.C. § 1981. The district court granted Defendants' motion to dismiss all of Mack's claims except his claim that his discharge was discriminatory and in violation of Title VII. On February 5, 1990, the Co-op and Gunter filed a motion for summary judgment on Mack's remaining claim of discriminatory discharge. The magistrate judge to whom the case was assigned concluded that Mack had not alleged a prima facie case of discrimination, and that summary judgment in favor of the Defendants should be granted. By order dated February 27, 1992, the district court ruled that the magistrate judge had erred in not finding a prima facie case of discrimination. Even so, the court concluded that summary judgment in favor of Defendants was appropriate because Mack failed to meet his burden of rebutting the Defendants' statement of legitimate, nondiscriminatory reasons for discharging him. Mack filed a timely notice of appeal.
 
 II
 
 8
 The basic allocation of burdens and order of presentation of proof in a Title VII case alleging discriminatory treatment are well-known. First, the plaintiff has the burden of proving a prima facie case of discrimination. The burden of establishing a prima facie case is not onerous, and once established the burden shifts to the defendant to offer some legitimate, nondiscriminatory reason for the employee's termination. Should the defendant carry this burden, the plaintiff must have the opportunity to prove that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. See Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 80204 (1973); Conkwright v. Westinghouse Elec. Corp., 933 F.2d 231, 234-35 (4th Cir. 1991). The plaintiff may show pretext either directly, by showing that a discriminatory reason more likely motivated the employer, or indirectly, by showing that the employer's proffered explanation is unworthy of credence. Burdine, 450 U.S. at 256.
 
 
 9
 In the case at bar, the district court held that Mack established a prima facie case of discrimination. The Co-op then offered legitimate, nondiscriminatory reasons for its discharge of Mack. According to the affidavit of Ray Gunter, Mack was terminated for violating the Coop's moonlighting policy and for making the Co-op's connection at the Muller home in a faulty and dangerous manner.* The district court held that Mack failed to rebut the Co-op's statement of legitimate nondiscriminatory reasons for discharging him, and thus granted summary judgment for the Defendants.
 
 
 10
 In granting summary judgment for the Defendants, the district court in effect held that Mack had not raised "a genuine issue of material fact" as to whether the Co-op's articulated reasons for termination were pretextual. To raise a genuine issue of material fact, Mack must present evidence supporting his position through"depositions, answers to interrogatories, and admissions on file together with ... affidavits, if any." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Mack filed no affidavits or exhibits in opposition to the Defendant's motion for summary judgment.
 
 
 11
 Mack does contend that the district judge failed to consider facts and inferences that demonstrate pretext. For example, Mack asserts that white employees violated the moonlighting policy and were not discharged. By this assertion, Mack attempts to show that he was treated differently from similarly situated white employees. As noted by the Co-op, however, Mack failed to produce any admissible evidence that the Co-op had knowledge of similar violations. In his affidavit, Ray Gunter denied knowing of any similar violations of the moonlighting policy. Mack's allegation that the Co-op did not discipline white employees who violated the moonlighting policy is not evidence of race discrimination absent a showing that someone in authority knew of the violations. See Jones v. Gerwens, 874 F.2d 1534 (11th Cir. 1989); Blum v. Gulf Oil Corp., 597 F.2d 936 (5th Cir. 1979). Mack's claim that the district court failed to consider other evidence probative of pretext is similarly unavailing.
 
 
 12
 We consider summary judgment to be appropriate in Title VII cases, despite the fact that these cases often turn on factual questions better resolved at trial. See Ross v. Communications Satellite Corp., 759 F.2d 355 (4th Cir. 1985). While we recognize that Defendants' intent is at issue, Mack's mere incantations of the Co-op's improper motive do not insulate him from summary judgment. Id. at 365. See also Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir.) (the summary judgment rule would be rendered sterile if mere incantation of intent would suffice to defeat the motion), cert. denied, 474 U.S. 829 (1985).
 
 
 13
 Each of the reasons offered by the Co-op for its decision to terminate Mack is legitimate and nondiscriminatory. Our review of the record indicates that Mack failed to submit evidence which would create genuine issues of material fact on whether either of these reasons was pretextual. Entry of summary judgment for the Defendants was justified as a matter of law.
 
 AFFIRMED
 
 
 *
 We note that Mack's discharge notice, signed by Ray Gunter, made no reference to the charge that Mack had performed Co-op work at the Muller home improperly. Instead, the discharge notice stated that Mack was discharged for failure to follow orders, insubordination, unauthorized use of Co-op equipment, and violation of the Co-op's moonlighting policy. We do not find Gunter's affidavit and Mack's discharge notice to be inconsistent merely because Gunter's affidavit articulates a legitimate reason for Mack's discharge not listed on Mack's disciplinary notice